UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IVAN FOSSESIGURANI,<br>    PLAINTIFF,<br><br>v.<br><br>CITY OF BRIDGEPORT FIRE DEPARTMENT<br>And JOHN O'MALLEY,<br>    DEFNDANTS. | CIVIL ACTION NO.<br>3:11-cv-752 (VLB)<br><br>OCTOBER 1, 2012 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. #29]**

Before the Court is a motion for summary judgment filed by the Defendants, City of Bridgeport ("City") and former fire commissioner John O'Malley ("O'Malley"). The Plaintiff, Ivan Fossesigurani, brought this suit alleging that he suffered unlawful employment discrimination on the basis of his disability in violation of the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq*. Plaintiff also brings state law claims for unlawful employment discrimination on the basis of his race and disability in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a) *et seq*., defamation and intentional and negligent infliction of emotional distress. For the reasons stated hereafter, Defendants' motion for summary judgment is granted.

**Facts and Procedural Background**

The following facts are undisputed unless otherwise noted. Plaintiff is an assistant chief in the Bridgeport Fire Department. [Dkt. #29.] Def. Local Rule

56(A)(1) Statement, ¶2]. He has been employed by the department for 34 years. John O'Malley was a member of the Bridgeport Fire Commission (the "Commission") from 2003 until June 2009. *Id.* at ¶1. The Commission consisted of seven members appointed by the mayor. One of the associated duties of the Commission is to review the attendance records of all fire department personnel who are out of work for an extended period of time. *Id.* at ¶¶3-4. In September and October 2008, Fire Chief Brian Rooney brought Plaintiff for an attendance review because he had been out of work for a significant period of time and because of his history of poor attendance. *Id.* at ¶7. Fire Department records indicate that from 1990 through 2009, Plaintiff missed 938 work days. *Id.* at ¶8. Since 2004, he has missed 430 work days. *Id.*

On April 24, 2009, O'Malley, an owner of a home delivery heating oil business, was called to a customer's home in Bridgeport. *Id.* at ¶9. When O'Malley arrived at his customer's home, members of the Bridgeport fire department were on the scene. *Id.* at ¶11. O'Malley asked the firefighters about the whereabouts of Lt. John Macnicholl. *Id.* at ¶12. One firefighter told O'Malley that Macnicholl worked on another Engine. *Id.* Macnicholl had been previously terminated and then subsequently reinstated to employment with the fire department. *Id.* His termination related to a physical altercation that Macnicholl had with the Plaintiff a few years earlier. *Id.* O'Malley then stated that he would rather have one hundred Macnicholls than one "Conniving Ivan." *Id.* Plaintiff learned about O'Malley's "Conniving Ivan" statement from firefighter Tyler

Moraes. *Id.* at ¶15.   Plaintiff asked the firefighters who had heard and witnessed O'Malley's comment to write a statement for him of what occurred.  *Id.* a

Plaintiff asserts that he suffers from hypertension as well as a back and neck injury.  *Id.* at ¶20.   Plaintiff does not know what type of spinal injury he has.  *Id.* at ¶22.

Plaintiff testified in a deposition that the "Conniving Ivan" incident affected his ability to perform his duties as an employee of the Bridgeport Fire Department "in a lot of ways, mostly personal at home, and just everything that I was doing.  I used to go out, and I was just staying home.  And it just affected my personal life, it really affected me."  [Dkt. #29, Ex. B, Dep., p.36].  Plaintiff further testified that as a result of the incident he has not lost any salary from the City of Bridgeport salary nor has he lost any benefits associated with his job.  *Id.* at p. 60.

Plaintiff also testified that he thinks he has lost prospects of future employment.  He testified that "I wanted to retire and apply for these other jobs, just like our present fire chief is doing right now . . . Those option were, for me, because of these comments and --- that he made, derogatory remarks towards me, and it's gotten around all over the place, I feel that he hurt my chances of going into – I shouldn't even apply for these jobs, because my chances are none. He just – he squashed my career, everything I worked for my whole career.  One swipe of his tongue, he just took my legs out from under me."  *Id.* at 60-61. Plaintiff testified that he has only applied for a position in the department of police, traffic division, in Greenwich and that his application is still pending.  *Id.* at 62-63.  Plaintiff stated that he has not applied to any other positions beside the

one at the Greenwich Police Department. *Id.* at 63. Plaintiff further testified that if the deputy chief position in the Bridgeport Fire Department becomes open and the city offers an exam, he would take the exam and apply. *Id.* at 63

Plaintiff asserts that as a result of O'Malley's comment his reputation has been damaged. He testified that while at a Sear's department store he encountered a Milford Firefighter who asked him who was Conniving Ivan. [Dkt. #36, Ex.A, Dep. p. 41 and Ex. E, Pl. Affidavit, ¶18]. Plaintiff also states in an affidavit that "My reputation and good name has been harmed by these statements,"[t]hese statements have impeded my ability to interact and work with Firemen which I supervise," and "[m]y ability to pursue further employment has been damaged by these statements." [Dkt. #36, Ex. E, Pl. Affidavit, ¶¶22, 24-25].

### Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.,* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party,

summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir.2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D.Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

Analysis

I.  ADA Employment Discrimination Claims

Plaintiff alleges that the Defendants discriminated against him on the basis of his disability.  To establish a prima facie case under the ADA[1], a plaintiff must

---

[1] The Court notes that the current version of the ADA incorporates the ADA Amendments Act of 2008 ("ADAAA") which introduced a new standard for

show "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.,* 531 F.3d 127, 134 (2d Cir.2008).

ADA claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 802 (1973). If Plaintiff can establish a *prima facie* case, the burden shifts to the Defendants to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell*, 411 U.S. at 802. As this stage, Defendants need only proffer, not prove, the existence of a nondiscriminatory reason for their employment decision. *See Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). "This burden is one of production, not persuasion, it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (internal quotations omitted).

If a Defendant meets its burden of production, the burden shifts back to Plaintiff to show that the legitimate, nondiscriminatory reason offered by the Defendant is mere pretext for illegal employment discrimination. *McDonnell*, 411

---

evaluating whether an employee was "regarded as having such an impairment." The ADAAA applies to Plaintiff's claims as they arose after Jan. 1, 2009. Although the ADAAA "substantially broadened the definition of a disability under the law," *Hutchinson v. Ecolab, Inc.*, No.3:09cv1848(JBA), 2011 WL 4542957, at *7 (D. Conn. Sept. 28, 2011), this change is not pertinent to the Court's analysis as the Defendants only argue on the motion for summary judgment that the Plaintiff failed to demonstrate that he suffered an adverse employment action.

U.S. at 804. "Although the intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Defendants argue that the Plaintiff has failed to demonstrate that he suffered an adverse employment action. An adverse employment action is a "materially adverse change in the terms and conditions of employment" and must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Sanders v. N.Y.C. Human Res. Admin.,* 361 F.3d 749, 755 (2d Cir.2004) (quotation marks omitted); *see also Davis v. NYC Dep't of Educ.,* No. 10–CV–3812(KAM), 2012 WL 139255, at *6 (E.D.N.Y. Jan.18, 2012) (applying same standard to an ADA claim). Examples of materially adverse changes in working conditions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003) (citation omitted).

Plaintiff argues that he suffered an adverse employment action because O'Malley's "Conniving Ivan" comment damaged his reputation which impacted his ability to perform his job in the fire department which Plaintiff claims is a "'para-military organization' where hierarchy is essential for orders to be given in potentially life threatening situations." [Dkt. #36, Pl. Opp. to Summary Judgment, p. 8-9]. Plaintiff argues that the Second Circuit's decision in *Lore v. City of*

*Syracuse*, 670 F.3d 127 (2d Cir. 2012) supports his claim that reputational damage can constitute an adverse employment action. However, Plaintiff misunderstands the Second Circuit's holding in *Lore*. In *Lore*, the Second Circuit considered an appeal from a jury verdict in favor of plaintiff on an employment retaliation claim awarding damages for injury to her reputation. The Second Circuit merely reiterated that it is well established that damages from injury to one's reputation are recoverable under Title VII. In *Lore*, the Second Circuit never considered the question of whether reputational damage alone could constitute an adverse employment action. Plaintiff also argues that he suffered an adverse employment action because "he lost the ability to successfully apply for job opportunities outside of the Bridgeport Fire Department." [Dkt. #36, Pl. Opp. to Summary Judgment, p. 9].

It does not appear that reputational damage alone stemming from criticism of an employee constitutes an adverse employment action under the law. Courts have routinely held that negative evaluations alone without any other ramifications or diminution in the terms of employment do not constitute adverse employment actions. S*ee, e.g., Tepperwien v. Entergy Nuclear Operations,* 663 F.3d 556, 571 (2d Cir.2011) ("[E]mpty verbal threats do not cause an injury, and therefore are not materially adverse actions, where they are unsupported by any other actions.") (internal quotation marks and citation omitted); *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001) (criticism of an employee alone did not establish adverse employment action where the evidence did not "describe its effect or ramifications, how or why the effect would be serious,

whether it went into any file, or even whether it was in writing"), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Mabry v. Neighborhood Defender Serv.,* 769 F.Supp.2d 381, 393 (S.D.N.Y.2011) ("Negative evaluations or reviews, without accompanying tangible harm or consequences, do not constitute materially adverse action altering the conditions of employment"). Here, O'Malley's comment can be considered akin to a negative evaluation or review of the Plaintiff. Consequently, his comment alone without any accompanying tangible harm or consequences which materially altered the condition of his employment cannot constitute an adverse employment action. Here, Plaintiff has failed to offer any evidence of tangible harm or a consequence stemming from O'Malley's comment as it is undisputed that his pay, rank, and benefits were not altered. Indeed, Plaintiff testified that he did not lose salary or any benefits associated with his job. [Dkt. #29, Ex. B, Dep., p.36]. A reasonable juror could not conclude that O'Malley's comment materially altered the condition of Plaintiff's employment where he did not lose rank, pay, benefits or had diminished material responsibilities at his job.

Even assuming reputational damage alone could constitute an adverse employment action, Plaintiff has failed to offer evidence that his reputation was so damaged that the terms and conditions of his employment were effectively altered. Plaintiff mainly relies on his own conclusory assertions in his affidavit and deposition testimony to support his claim that his reputation was damaged by O'Malley's comment. However, it is well established that at the summary judgment stage,"[t]he non-moving party may not rely on conclusory allegations

or unsubstantiated speculation." *Scotto v. Alemas*, 143 F.3d 105, 114 (2d Cir. 1998). The only other evidence of reputational damage that Plaintiff offers besides his own beliefs and speculations is that a Milford Firefighter asked him who "Conniving Ivan" is. No reasonable fact-finder could conclude based on the Milford Firefighter's comment that Plaintiff had suffered a materially adverse change in the terms and conditions of his employment. *See Uddin v. City of New York*, No.07Civ.1356(PAC)(DF), 2009 WL 2496270, at *17 (S.D.N.Y. Aug. 13, 2009) (finding plaintiff has not offered evidence capable of showing that the posting of article constituted an adverse employment action as "plaintiff merely alleges the article caused damage to his reputation and thereby to his future career prospects, without supporting these allegations with any evidence in admissible form.").

Moreover, although Plaintiff indicated that O'Malley's comment affected his personal life greatly such that he no longer goes out but instead stays at home, subjective feelings cannot transform an act into an adverse employment action. An adverse employment action "must be viewed from the perspective of a reasonable employee" because the "standard for judging harm must be objective to avoid the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Pacheco v. N.Y. Presbyterian Hosp.,* 593 F.Supp.2d 599, 627 (S.D.N.Y.2009) (citation omitted); *see also Pimental v. City of New York*, No.00CIV.325(SAS), 2002 WL 977535 at *4 (S.D.N.Y. May 14, 2002) ("An adverse employment action affects the terms, privileges, duration, or conditions of the plaintiff's employment and, for that

reason, subjective feelings ... are not enough to transform the denial [of a transfer request] into an adverse employment action within the meaning of Title VII.") (internal quotation marks and citation omitted); *Garber v. New York City Police Dept.,* No. 95 Civ. 2516, 1997 WL 525396, at *4 (S.D.N.Y. Aug. 22, 1997) (holding that "purely subjective feelings about a transfer which, by objective standards, did not negatively alter the terms and conditions of his employment in any respect" have no bearing on whether an adverse employment action occurred); *Armfield v. Jacobson,* No. 95–CV–4820, 1998 WL 427560, at *6 (E.D.N.Y. Jan. 21, 1998) (Interference with "sleeping, therapy, eating and medication schedules are purely subjective matters that Title VII does not address."). Consequently, Plaintiff's subjective belief that he suffered an adverse employment action because the comment affected him personally is not enough to survive a summary judgment motion.

Actions which may result in the inability to secure future employment may be properly considered adverse employment actions in certain circumstances. *See e.g., Vernon v. Port Authority of New York and New Jersey,* 154 F.Supp.2d 844, 855 (S.D.N.Y., 2001) (act resulting in potential inability to secure future employment could constitute an adverse act.); *Tse v. UBS Financial Servs., Inc.*, 568 F.Supp.2d 274, 288 (S.D.N.Y. 2008) ("Although [a] materially adverse change in working conditions must be more duptive than a mere inconvenience or an alteration of job responsibilities, an adverse employment action may be found where the action affects the employee's future employment opportunities.") (internal quotation marks and citation omitted); *Wiley v. Glassman,* 511 F.3d 151,

157 (D.C.Cir., 2007) ("An employment action may be sufficient to support a claim of discrimination if it results in materially adverse consequences affecting ... future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.") (internal quotation marks and citation omitted).

The Plaintiff has failed to offer evidence beyond his own subjective beliefs and speculations that he lost the ability to successfully apply for job opportunities. It is well established that a plaintiff cannot defeat a motion for summary judgment "on the basis of conjecture or surmise." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."). Plaintiff has indicated that he has only applied for one position since O'Malley's comment and that his application is still pending. Therefore he has not offered any evidence that he has applied and been routinely denied employment opportunities after O'Malley's comment, nevertheless proven that he was not hired for those other positions because of O'Malley's comment. Plaintiff's bare assertion that he has lost prospects of future employment is clearly insufficient to demonstrate an adverse employment action. *Chamberlin v. Principi,* No. 02 Civ. 8357, 2005 WL 1963942, at *5 (S.D.N.Y. Aug.16, 2005) (finding that plaintiff had not shown an adverse employment action where there was no evidence that "his career opportunities within or without [his place of employment] were damaged as a result of [a] lowered [performance] evaluation"); *Shrira v. State Univ. of New York*

*at Buffalo*, No.02-CV-296A, 2007 WL 1201580, at *4 (W.D.N.Y. April 23, 2007) (holding former employer's delay in responding to charge filed by the employee with the Department of Human Rights cannot constitute an adverse employment action because no reasonable juror could find that the delay "sullied Plaintiff's reputation or had any negative or adverse effect on Plaintiff's ability to secure future employment."); *Frontline Communications Intern., Inc. v. Sprint Communications Co.*, 374 F.Supp.2d 368, 371 (S.D.N.Y. 2005) (Plaintiff's "bare assertion that he has been prejudiced in his ability to secure employment is insufficient to survive a motion for summary judgment."); *see also Probst v. Ashcroft,* 25 Fed. Appx. 469, 472 (7th Cir.2001) ("Hypothetical possibilities are not materially adverse employment actions."); *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1239 (11th Cir.2001) ("[T]he asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."); *Aquilino v. University of Kansas,* 268 F.3d 930, 936 (10th Cir.2001) ("Speculative harm does not constitute adverse employment action."). Evening viewing the evidentiary record in the light most favorable to the Plaintiff, a reasonable juror could not find that O'Malley's comment resulted in an objectively tangible harm to Plaintiff's future employment opportunities. Plaintiff has failed to demonstrate that he suffered an adverse employment action to establish a prima facie case of disability discrimination under the ADA. The Court therefore grants Defendants' motion for summary judgment on Plaintiff's ADA employment discrimination claim.

    II.    ADA Hostile Work Environment Claim

The Second Circuit has not yet decided whether the ADA provides a basis for a hostile work environment claim. *Farina v. Branford Bd. of Educ.*, 458 Fed. Appx. 13, 16-17 (2d Cir. 2011). Assuming arguendo that the ADA does provide a basis, the record is devoid of evidence that the Defendants' conduct was sufficiently continuous and concerted to have altered the conditions of his work environment to maintain a claim for hostile work environment. The Court therefore assumes without deciding that a claim for hostile work environment can be predicated under the ADA. The Court will consequently look to Title VII caselaw on hostile work environment to assess Plaintiff's claim. Under Title VII, it is unlawful for an employer to subject individuals to a discriminatorily hostile or abusive work environment. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993); 42 U.S.C. § 2000e–2(a)(1). To prove that a workplace is actionably "hostile" under Title VII, a plaintiff must demonstrate that: (1) he "subjectively perceive[d] the environment to be abusive;" (2) the conduct was so "severe or pervasive" that it created an "objectively hostile or abusive work environment", meaning "an environment that a reasonable person would find hostile or abusive;" and (3) the conduct created an environment abusive to employees "because of their race, gender, religion or national origin." *Harris*, 510 U.S. at 21–22. Under the ADA, Plaintiff must presumptively demonstrate that the conduct created an environment abusive to employees because of their disabilities.

The Supreme Court has established a non-exhaustive list of factors relevant to determining whether a workplace is so severely or pervasively hostile as to support a Title VII claim. These include "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether the conduct unreasonably interfered with plaintiff's work; ... whether it unreasonably interferes with the employee's work performance[;]" and "[t]he effect on the employee's psychological well-being[.]" *Id.* at 23.

To determine "whether an environment may be considered sufficiently hostile or abusive to support [a Title VII claim]," courts must consider "the totality of the circumstances." *Williams v. Westchester,* 171 F.3d 98, 100 (2d Cir.1999) (citing *Harris,* 510 U.S. at 23). The factors outlined above must be evaluated "cumulatively" so that the Court can "obtain a realistic view of the work environment." *Schwapp v. Town of Avon,* 118 F.3d 106, 111 (2d Cir.1997) (citations omitted). This includes evaluating the "quantity, frequency, and severity" of the discriminatory incidents. *Id.* "In order to meet [his] burden, the plaintiff must show more than a few isolated incidents of racial enmity[.]" *Williams*, 171 F.3d at 100. Instead, the plaintiff "must establish that his workplace was permeated with instances of racially discriminatory conduct such as 'discriminatory intimidation, ridicule, and insult,' such that 'the environment would reasonably be perceived, and is perceived, as hostile or abusive.' *Id.* (citations omitted).

Plaintiff has failed to demonstrate that the alleged conduct was sufficiently continuous and concerted to have altered the conditions of his work environment to maintain a claim for hostile work environment. Indeed, Plaintiff has identified a single incident of alleged disability enmity on the part of O'Malley who doesn't

regularly work with Plaintiff at the Bridgeport Fire Department. Courts in the Second Circuit have found that "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76 (2d Cir, 2001) (internal quotations and citations omitted); *Rios v. Buffalo and Fort Erie Public Bridge Authority*, No.04-cv-375A, 2008 WL 657121, at *3 (W.D.N.Y. March 7, 2008) (finding that behavior complained of was "simply too infrequent and episodic to constitute a hostile work environment" where plaintiff identified "only about six specific instances of misconduct over a thirteen-year period of time"); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354 (5th Cir. 2001) (holding that eight incidents of racial harassment over a twenty-five month period were not sufficiently severe or pervasive to create a hostile work environment); *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 713 (2d Cir.1998) (occasional offensive racial comments are not sufficiently severe or pervasive to establish a hostile work environment); *Hannon v. Wilson Greatbatch, Ltd,* No.00-CV-0203e(F), 2002 WL 1012971, *7 (W.D.N.Y. April 24, 2002) (the "mere utterance of an epithet which engenders offensive feelings" is insufficient to sustain a hostile work environment claim. "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated instances of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain

a realistic view of the work environment.") (internal quotation marks and citation omitted). Here, Plaintiff has complained of the mere utterance of a single comment by someone who was not his co-worker or direct supervisor. A single comment is insufficient to constitute a hostile work environment regardless of the fact that Plaintiff felt harassed and abused by that comment. To demonstrate a hostile work environment, Plaintiff must show that there was a steady barrage of opprobrious comments reflective of disability enmity and not a single incident. Even viewing the evidentiary record in the light most favorable to the Plaintiff, a reasonable juror could not conclude that hostility towards disabilities was sufficiently severe and pervasive to create a hostile work environment. The Court therefore grants Defendants' motion for summary judgment as to Plaintiff's ADA hostile work environment claim.

### III.     Remaining State Law Claims

Having granted summary judgment as to the federal law claims against the Defendants, the Court declines to exercise its supplemental jurisdiction over the Plaintiffs' remaining state law claims. "Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus, the court need not exercise supplemental jurisdiction in every case." *Nicholson v. Lenczewski*, 356 F.Supp.2d 157, 165-66 (D. Conn. 2005) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 715-26 (1966)). "The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants. The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal

court would be required to interpret state law in the absence of state precedent. In addition, the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction." *Id.* (citing 28 U.S.C. § 1367(c)(3)); *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims").

Here, this case has only been pending since May, 2011. In addition, the Court has not had occasion to, and thus has not ruled on any prior substantive motions and therefore has not developed familiarity with any of the state law issues in this case. *See Horton v. Town of Brookfield*, No.CIV.A.3:98CV01834, 2001 WL 263299, *9 (D. Conn. March 15, 2001) ("In balancing the factors in this case, the court declines to exercise supplemental jurisdiction over the remaining claims. The case is two years old and nearly ready for trial. In addition, the court has ruled on various dispositive motions and developed familiarity with the issues in the case. However, none of the court's rulings have specifically addressed the remaining state law claims, and the court is not familiar with those claims."). Since the remaining claims are purely state law claims, the Court declines to exercise jurisdiction over those claims. Those claims are dismissed without prejudice to re-filing in state court.

**Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' [Dkt. #29] motion for summary judgment. The Plaintiff's state law claims are dismissed without prejudice to pursuing in state court. The Clerk is directed to enter judgment in favor of Defendants on Plaintiff's federal law claims and close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: October 1, 2012